**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**DIARRE HAMILTON, #369204,**

    **Petitioner,**

                                                  **Civil No: 05-CV-71278
                                                  Honorable Denise Page Hood**

**v.**

**ANDREW JACKSON**,

    **Respondent.**

_____

**OPINION & ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

**I. INTRODUCTION**

    This matter is before the Court on Petitioner's *pro se* request for habeas relief pursuant to 28 U.S.C. §2254. **[Docket No. 1, filed April 11, 2005]**. On September 30, 2005, Respondent filed his "Answer in Opposition to Petition for Writ of Habeas Corpus." **[Docket No. 5]**. Petitioner filed a "Reply Brief" **[Docket No. 25, filed Nov. 8, 2005]** in support of his habeas petition. At the time Petitioner filed this habeas petition, he was a state prisoner confined at Mound Correctional Facility with Andrew Jackson as his warden. Presently, however, Petitioner is incarcerated at Muskegon Correctional Facility in Muskegon, Michigan with Shirlee A. Harry as his warden. Petitioner asserts that he is in custody in violation of his constitutional rights.

    He was convicted in Wayne County Circuit Court of first-degree felony murder, assault with intent to commit murder, armed robbery, assault with intent to rob while armed, and possession of a firearm during the commission of a felony. He was sentenced to concurrent prison terms of life without parole for the felony murder conviction, twenty-five to forty years for the assault with intent to commit murder conviction, twenty to thirty years' imprisonment for the armed robbery and

assault with intent to rob convictions, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Petitioner raises three claims for habeas review: (1) whether the prosecutor engaged in misconduct; (2) whether Petitioner received ineffective assistance of counsel because he failed to object to the prosecutor's repeated attacks on his (trial counsel's) veracity; and (3) whether the trial court erred when it excluded evidence of Corey Gibbs' sentences and capias history for offenses which were pending during the trial of this matter. Respondent argues that Petitioner's prosecutorial misconduct claim is procedurally defaulted and lacks merit. Respondent further claims that Petitioner's ineffective assistance of counsel issue is without merit. Finally, Respondent asserts that Petitioner's argument that he was denied his right to present a defense is not cognizable for habeas review and is without merit.

Upon review of the pleadings and for the reasons set forth below, the Court will deny Petitioner's request for habeas relief.

## II. STATEMENT OF FACTS

Petitioner's conviction arises from the shooting death of Tranika Brown and the non-fatal wounding of Kelvin Brown. The testimony indicates that these events took place at what was described as a drug house on Greenlawn in Detroit, Michigan. Corey Gibbs, Kelvin Brown, and Sallie Jackson testified that they were in the Greenlawn home on May 21, 2000 when Petitioner and Kenya Rogers were also present in the house. The testimony taken as a whole reveals that Petitioner and Rogers were in the process of robbing Gibbs and Brown when Tranika Brown (hereinafter Decedent) entered the house. Shortly after her arrival, Petitioner began shooting, striking Brown in his hands and killing Decedent. Brown escaped from the house to a neighbor's home and was taken to the hospital. Gibbs fled the residence unharmed. Jackson hid in the basement until the

police arrived; and she was also unharmed. Four days later, on May 25, 2000, Petitioner was arrested in Jacksonville, Florida.

## III. PROCEDURAL HISTORY

Following his conviction and sentencing, Petitioner filed a direct appeal of right with the Michigan Court of Appeals raising the following issues: (1) whether the prosecutor engaged in misconduct; (2) whether Petitioner received ineffective assistance of counsel because he failed to object to the prosecutor's repeated attacks on his (trial counsel's) veracity; and (3) whether the trial court erred when it excluded evidence of Corey Gibbs' sentences and capias history for offenses which were pending during the trial of this matter. On July 24, 2003, the Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Hamilton,* No.236365, 2003 WL 21715881 (Mich. Ct. App. July 24, 2003). Following the state appellate court's decision, Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same issues presented for review before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal, indicating that it was not persuaded that the issues presented should be reviewed. *People v. Hamilton,* 469 Mich. 989, 674 N.W.2d 155 (Mich. 2003).

Petitioner thereafter filed his federal petition for writ of habeas corpus asserting the same issues presented for review to the state appellate courts. Respondent argues that Petitioner's claims are either procedurally defaulted, without merit, or not cognizable for habeas review.

## IV. STANDARD OF REVIEW

Petitioner is entitled to writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court

3

> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. §2254(d); *Harpster v. State of Ohio,* 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 412-23 (2000). "Avoiding these pitfalls doesn't require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Parker,* 537 U.S. 3, 8 (2002)(per curiam opinion) (emphasis in original). "Further, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence.  28 U.S.C. §2254(e)(1)." *Baze v. Parker,* 371 F.3d 310, 318 (6th Cir. 2004).

**V.  DISCUSSION**

    **A.  Prosecutorial Misconduct**

Petitioner claims that the prosecutor at trial engaged in misconduct in four respects by: (1) denigrating defense counsel; (2) referring to a subject matter that the court instructed the jury to disregard; (3) instructing the jury to disregard the law; and (4) creating cumulative errors. As an initial matter, Respondent asserts that Petitioner's denigration of counsel claim is procedurally

defaulted because the last state court to issue a reasoned opinion addressing the issue held that it was not preserved for review due to the trial counsel's failure to object to the prosecutor's conduct at trial. *People v. Hamilton,* 2003 WL 21715881, at *1.

### *1. Procedural Default*

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d. 2546 (1991). Consequently, the Petitioner's claim of denigration of counsel as a basis for prosecutorial misconduct is procedurally defaulted. The Court, however, need not address the procedural default issue here.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89, 118 S. Ct. 478, 139 L. Ed. 2d 444 (1997); *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005). While the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999)(internal citations omitted); *see also Lambrix v. Singletary,* 520 U.S. 518, 524-25, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997); *Ferensic v. Birkett,* 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). The Court deems it more efficient in this case to proceed directly to the merits of the petitioner's claims.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors:  1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Broom v. Mitchell*, 441 F.3d 392, 412-13 (6th Cir. 2006). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal citations omitted).

### *2. Denigration of Defense*

The appellate court concluded that Petitioner's denigration of defense claim did not warrant reversal and stated as follows:

> This Court generally reviews claims of prosecutorial misconduct on a case by case basis to determine whether the defendant was denied a fair trial. Here, however,

6

> defendant did not preserve some of his allegations of misconduct with an appropriate objection at trial. We review these unpreserved claims for plain error affecting defendant's substantial rights.
>
> \* \* \*
>
> Although it is improper for a prosecutor to attack defense counsel and suggest that counsel is intentionally trying to mislead the jury, the challenged remarks, viewed in context, were aimed at urging the jury to stay focused on the evidence. They did not constitute plain error. Further, it was not plainly improper for the prosecutor to argue that the defense view of evidence was not worthy of belief.

*People v. Hamilton,* 2003 WL 21715881, at *1 (citations omitted).

Petitioner asserts that the prosecutor denigrated defense counsel during his closing and rebuttal argument by making remarks in an effort to mislead and confuse the jury. Tr. 5/21/01 at 13-18, 96-105 **[Docket No. 19]**. It is clearly inappropriate for a prosecutor to make personal attacks on opposing counsel. *United States v. Collins,* 78 F.3d 1021, 1040 (6th Cir. 1996). In this case, the Court does not find that the prosecutor's remarks were an attack upon trial counsel. Instead the Court agrees with the Michigan Court of Appeals' assessment of the prosecutor's remarks: "the challenged remarks, viewed in context, were aimed at urging the jury to stay focused on the evidence." *People v. Hamilton,* 2003 WL 21715881, at *1.

Additionally, prosecutors are ordinarily "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel," as well as to the defense's trial strategy. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000). The Court does not find that the prosecutor's remarks were inappropriate or exceeded the bounds of fair advocacy. In addition, the jury was instructed that the attorney's statements and arguments were not evidence. Tr. 5/21/01 at 109 **[Docket No. 19]**. Therefore, the prosecutor's closing and rebuttal argument did not abridge the Petitioner's right to a fair trial.

### *3. Prosecutor's Reference to Subject Matter*
### *the Court Instructed the Jury to Disregard*

During defense counsel's closing argument, he made a reference to the Oklahoma City bombing. Tr. 5/21/01 at 62 **[Docket No. 19]**. The prosecutor objected to the statement, and after a brief side bar discussion, the Court stated as follows: "[m]embers of the jury, there's no relationship between what happened in the case in Oklahoma and here, so disregard any reference to Oklahoma." *Id.* During the prosecution's rebuttal argument he showed the jury a chart with "Okla," written on it, however, making no verbal argument about the abbreviation. *Id.* at 102. Defense counsel objected to the visual reference and requested a mistrial, since the Court previously informed the jury to disregard any reference to Oklahoma. *Id.* at 147-48. The trial court also considered the Oklahoma reference as an "area ...of concern." *Id.* at 157. However, the trial court didn't "find that it rises to the level of prosecutorial misconduct at this stage so, therefore [she denied] the motion for mistrial." *Id.* at 159-60.

>The Michigan Court of Appeals affirmed the trial court's finding by stating:
>
>We agree that it was improper for the prosecutor to point to "Okla" on a chart after the court had earlier ruled, in response to an improper reference by defense counsel, that the jury was to disregard any reference to "Oklahoma." However, in light of the trial court's instruction to the jury to disregard any references to Oklahoma, and defendant's failure to pursue this issue further, we are satisfied that this isolated occurrence did not deprive defendant of a fair and impartial trial.

*People v. Hamilton,* 2003 WL 21715881, at *1.

The Court agrees. Petitioner has not established that the state court's determination regarding the Oklahoma reference was contrary to or an unreasonable application of Supreme Court precedent. The federal courts, in the exercise of habeas corpus jurisdiction, are possessed of no general supervisory authority over the state criminal court proceedings. *See Long v. Smith,* 663 F.2d

22, 22-23 (6th Cir. 1981). "This limitation is equally applicable to alleged prejudicial arguments of state prosecutors as it is to other phases of state court trial." *Maddux v. Rose,* 483 F.Supp. 661, 672 (E.D. Tenn. 1980).

Moreover, a trial judge must exercise "sound discretion" when deciding whether to declare a mistrial. *Arizona v. Washington,* 434 U.S. 497, 514, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). "Thus, if a trial judge acts irrationally or irresponsibly, his [or her] action cannot be condoned." *Id.* (internal citations omitted). Reviewing courts, however, must accord "great deference" to the trial judge's decision. *Id.* at 510. In light of the trial court's cautionary instruction that statements made by the attorneys are not evidence, and the fact that the prosecutor's Oklahoma reference was not so prejudicial as to deprive Petitioner of a fair trial, the trial court acted responsibly in denying Petitioner's motion for a mistrial.

Finally, the Court finds that an aspect of the doctrine of invited error is applicable in this case. "The doctrine . . . refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit." *United States v. Sharpe,* 996 F.2d 125, 129 (6th Cir. 1993). Although, the prosecutor's act of referencing the Oklahoma City bombings was improper in light of the above referenced circumstances, defense counsel injected the issue of the Oklahoma city bombings into the trial by raising the issue during his closing argument, thereby prompting the prosecutor's rebuttal Oklahoma reference. Petitioner has waived habeas review of this claim under the doctrine of invited error. As such, Petitioner's claim regarding the Oklahoma reference does not warrant habeas relief.

### *4. Prosecutor's Instruction to the Jury to Disregard the Law*

Petitioner maintains that the prosecutor in this case urged the jury to disregard the law when

he made the following statements:

> The law requires the Judge to give you some things that are pretty ridiculous. You're going to hear something about involuntary manslaughter, whether or not this was gross negligence. To turn and shoot at killing level is not gross negligence. To engage in robbing Mr. Gibbs and Mr. Kelvin Brown does not gross negligence make.
>
> And, it even gets more ridiculous, ladies and gentleman, because you're going to hear the law requires self-defense - they ain't in no house and they've got to retreat before resorting to any physical force. Yet the law is such an ass on these facts that you're going to hear that it's my burden to prove that these two men did not act in self-defense as they were robbing Mr. Gibbs, and they were robbing Mr. Kelvin Brown, and turns and is shooting at head level toward people. You tell me that law isn't an ass.

Tr. 5/21/01, pp. 34-35. **[Docket No. 19]**

> The Michigan Court of Appeals addressed the issue as follows:
>
> Defendant further argues that the prosecutor improperly urged the jury to disregard the law. A defendant has no burden to produce any evidence. However, the prosecutor does not shift the burden of proof by commenting on the improbability of a defendant's theory, or by arguing, as he did here, that the evidence did not meet the definition of self-defense. Further, the jury was instructed that the arguments of counsel were not evidence and that it was to follow the instructions given by the court, even if the attorneys said something different. The court's instruction was sufficient to cure any perceived prejudice. Defendant was not denied a fair trial on this basis.

*People v. Hamilton,* 2003 WL 21715881, *2 (internal citations omitted).

The Court concludes that the prosecutor's comments were indeed improper. While a prosecutor is clearly authorized to strike hard blows in an earnest and vigorous prosecution, he or she "is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935). Encouraging the jury to disregard the law and minimizing the prosecutor's duty to prove all of the elements of the crime beyond a reasonable doubt falls below acceptable prosecutorial advocacy and makes a mockery of the principles underlying our system of justice. Now, the Court must determine if these improper comments were flagrant, and if so, whether such

misconduct was so gross, pronounced and persistent that Petitioner was denied his right to a fair trial.

With regard to the initial factor - whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant, the Court finds that there is no reasonable conclusion other than that the prosecutor intended to mislead the jury by arguing that the law should not require him to prove the Petitioner's guilt beyond a reasonable doubt. The Court would be remiss if it did not address the harm that statements such as these could potentially present. Divorced from its context, statements like, "the law requires the Judge to give you some things that are pretty ridiculous," and "you tell me that law isn't an ass" create an invitation for jurors to disregard the law, and ultimately undermine our legal system. These statements, arguably demeaning the rule of law, are not the caliber expected of those who are the representatives "not of an ordinary party to a controversy, but a sovereignty." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). This Court adamantly disapproves of such conduct, but notes that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Slagle*, 457 F.3d at 516.

In this vein, the Court highlights that if a prosecutor gives misinformation to the jury about the law, thereby encouraging the jury to disregard the proper and applicable law, an instruction to the jury by the court to accept the law as the court provides is sufficient to obviate the claim that habeas relief should be granted as a result of the alleged misleading statements made during closing argument. *Kincade v. Wolfenbarger*, No. 04-cv-72599, 2007 U.S. Dist. Lexis 33944, 2007 WL 1364709, *11-12 (E.D. Mich. May 9, 2007) (erroneous explanation by the prosecutor to the jury about the application of the imperfect self-defense theory).

11

In this case, the trial court stated as follows:

*It is my duty to instruct you on the law. You must take the law as I give it to you.* ***If a lawyer said something different about the law, follow what I say*** *. . .* ***You must take all my instructions together as the law you are to follow.*** You should not pay attention [to] some instructions and ignore others.

To sum up, it is your job to decide what the facts of this case are, to apply the law as I give it to you, and in that way to decide the case.

Tr. 5/21/01, pg. 107 (emphasis added). **[Docket No. 19]**

While the prosecutor's comments could easily mislead the jury, the second factor - whether the conduct or remarks were isolated or extensive - compels this Court to find that his statements, while deplorable, were not sufficiently flagrant. The improper comments occurred only once during the prosecution's closing argument. "The mere presence of prosecutorial misconduct is not enough, '[r]eversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Condon v. Wolfe*, No. 06-4205, 2009 U.S. App. Lexis 3136, 2009 WL 361384, at *7 (6th Cir. Feb. 12, 2009) (citing *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006)); *see also Slagle*, 457 F.3d at 526-27 ("All of the comments were isolated, and none were repeated after an objection. Thus, [this] factor does not support granting Slagle's petition."). The prosecutor's comments were isolated, and cannot be said to have infected all aspects of the Petitioner's trial.

As for the third factor - whether the remarks were made deliberately or accidently - this Court is convinced that the comments were intentional, even though they were mentioned only once during the State's closing argument. The prosecutor knew that his burden was to prove Petitioner's guilt beyond a reasonable doubt, and encouraging the jurors to compromise this burden of proof was

12

unacceptable. A public servant's duty is to vindicate the truth and seek justice and the prosecutor's deliberate attempt to lessen his burden of proof cannot be condoned.

As for the last factor -whether the evidence against the defendant was strong – this is the factor that compels this Court to conclude that habeas relief is unwarranted, despite the prosecutor's improper comments. More than sufficient evidence was admitted during trial to convict the Petitioner. The most compelling of which came directly from the mouths of three eyewitnesses, Corey Gibbs, Kelvin Brown, and Sallie Jackson, who all testified that the Petitioner was holding the murder weapon. Gibbs testified that the Petitioner "jumped on the couch and yelled out what's going on, and he pointed towards the door and started shooting." Tr. 5/9/01, pp.51. **[Docket No. 13-3]** Brown recounted how the Petitioner robbed him at gun point, and subsequently described how the Petitioner "stood on top of the couch and started shooting," Tr. 5/14/01, pp. 38. **[Docket No. 15-2]** and that the Petitioner even shot off three of the fingers on his right hand. *Id.*, p. 41-42 Jackson compellingly testified of fleeing after witnessing the Petitioner fire the weapon, and described how the Decedent reacted after being hit. Tr. 5/16/01, pp.78, 82. **[Docket No. 17-3]** This testimony was also corroborated by the testimonies of several police officers who arrived at the scene, the homicide detective, a forensic pathologist, a forensic chemist, and a forensic serologist.

In light of the foregoing analysis, this Court cannot conclude that the prosecutor's improper statements were so flagrant as to deny Petitioner a fair trial. While the prosecutor's statements were intentionally made in an attempt to mislead the jury as to his burden of proof, the statements were isolated and did not permeate the entire atmosphere of the trial. This fact, coupled with the strength of the evidence that was introduced against the Petitioner, compels the conclusion that the Michigan courts were not unreasonable in holding that the jury was not influenced by the prosecution's

statements inferring that the jury should disregard the law when deciding Petitioner guilty or not guilty. For these reasons, the Court does not find that habeas relief is warranted relative to Petitioner's prosecutorial misconduct claim.

### 5. *Cumulative Error*

Petitioner claims that he is entitled to habeas relief based upon the cumulative effect of the prosecutor's alleged misconduct during the course of his trial. The Michigan Court of Appeals disagreed with this claim stating that since it "rejected defendant's several claims of prosecutorial misconduct, we similarly reject his claim that the cumulative effect of the alleged misconduct denied him a fair trial." *People v. Hamilton,* 2003 WL 21715881 at 2. The Court agrees that Petitioner's cumulative error argument lacks merit as it also rejected Petitioner's several claims of prosecutorial misconduct. Constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief. *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied,* __U.S. __, 127 S.Ct. 557, 166 L.Ed.2d 424 (2006). Petitioner has not shown that this decision is contrary to United States Supreme Court precedent or that it constitutes an unreasonable application of federal law. Consequently, Petitioner is not entitled to habeas relief on the basis of cumulative error.

### B. Ineffective Assistance of Counsel

Petitioner contends that his trial attorney was ineffective due to his failure to object to the prosecutor's repeated attacks on defense counsel's veracity. To show a violation of the right to effective assistance of counsel, a petitioner must first establish that his attorney's performance was deficient "in that it fell below an objective standard of reasonableness." *Parish Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct.

14

2052, 80 L. Ed. 2d 674 (1984)). An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

The petitioner also must demonstrate prejudice, that is, show that counsel's deficient performance may have altered the results of the trial. *Id.* An attorney's deficient performance is prejudicial if his or her "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 694. Here, Petitioner asserts that the prosecutor denigrated defense counsel during his closing and rebuttal argument by making remarks in an effort to mislead and confuse the jury. Petitioner therefore claims that trial counsels' failure to object to the prosecutor's actions amounted to ineffective assistance of counsel. See Tr. 5/21/01 at 13-18, 96-105 **[Docket No. 19]**. The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel argument by stating in part:

> Counsel's decision about how to argue to the jury was a matter of trial strategy. It appears that, rather than object to the prosecutor's remarks, counsel attempted to turn those remarks to defendant's advantage in his own closing argument. Defendant has not overcome the presumption of sound trial strategy. The fact that the strategy was not successful does not amount to ineffective assistance.

*People v. Hamilton,* 2003 WL 21715881 at *2 (internal citations omitted).

The Court agrees. As set forth above, the Court did not find that the prosecutor's remarks rose to the level of denigration. Moreover, in light of the foregoing analysis, Petitioner is not able to demonstrate that his counsel's failure to object to the prosecutor's improper comments deprived him of a fair trial. Therefore, Petitioner has not shown that the state's application of *Strickland* was objectively unreasonable. Accordingly, Petitioner has failed to establish that the state court's decision on the ineffective assistance issue was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

### C. Denial of Right to Present a Defense

Petitioner contends that his right to present a defense was violated when the trial court excluded evidence of Gibbs' capias for his arrest for failing to come to court, but was nevertheless continued on bond after testifying at the preliminary examination. Petitioner asserts that this evidence was important because it would have demonstrated to the jury how Gibbs had motive to be untruthful, and how he was able to manipulate the system by testifying against Petitioner in order to help himself out of further trouble relative to this matter. The Michigan Court of Appeals rejected this argument by stating:

> In this case, there was ample evidence on the record to enable the jury to assess and evaluate Gibbs' credibility. The court was liberal in allowing defense counsel to elicit Gibbs' history of untruthfulness and experience with the criminal justice system. As defense counsel acknowledged below, Gibbs "unabashedly said how his responses to the police and the Court by way of testimony is to shift the heat or to get the heat off of him. He says how smart he is, and as an indication of how smart he is, how he got out of this one, meaning this case." There was no evidence that the prosecutor or police were involved in any "deal" in exchange for Gibbs' testimony. The jury was well aware of Gibbs' criminal record and his willingness to manipulate the system for his own benefit. The trial court did not abuse its discretion in limiting the cross-examination.

16

*People v. Hamilton,* 2003 WL 21715881 at 3. The Court agrees. It is recognized that while the right to present a defense is a fundamental tenet of due process, "[a] defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer,* 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused. *Id.* In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's rule is not to determine whether the excluded evidence would have caused the jury to reach a different result. *Davis v. Alaska,* 415 U.S. 308, 317, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1973). Instead the question is whether the defendant was afforded a "meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986).

The trial court's decision in this case did not prevent Petitioner from presenting a viable defense. As stated by the Michigan Court of Appeals, Petitioner had a meaningful opportunity and did present a defense with testimony that communicated the objective he was attempting to convey to the jury (i.e., Gibbs' credibility and motive issues). Through defense counsel's cross-examination, Gibbs testified about the fact that he sells drugs, that he has been on probation, that he has a pending

criminal case, and that he makes an effort to manipulate the judicial system to his advantage. Tr. 5/9/01 at 108-20 **[Docket No. 13]**. Therefore, the Court finds that Petitioner is not entitled to habeas relief relative to this claim.

## VI.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus **[Doc. #1-1, filed**

**April 1, 2005]** is **DENIED**.

                                               S/Denise Page Hood
                                               Denise Page Hood
                                               United States District Judge

Dated: April 13, 2009

     I hereby certify that a copy of the foregoing document was served upon counsel of record on April 13, 2009, by electronic and/or ordinary mail.

                                               S/William F. Lewis
                                               Case Manager